## NELLIE BONNER YOST ET AL. *vs.* WILHELMINA MOOG ET AL.

*Ejectment—Location of Boundary—Evidence.*

In an action of ejectment where the plaintiff alleged that the beginning point in the description of the land in a conveyance to him was located at a certain place and included the strip of land sued for, the evidence examined and held to be legally insufficient to prove this allegation, and that consequently the plaintiff is not entitled to recover.

*Decided June 14th, 1906.*

Appeal from the Superior Court of Baltimore City (STOCK-BRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, SCHMUCKER and BURKE, JJ.

*W. Calvin Chesnut* and *Charles Markell, Jr.* (with whom were *Gans & Haman* an the brief), for the appellant.

*Willis E. Myers* and *Charles F. Harley*, for the appellees.

McSherry, C. J., delivered the opinion of the Court.

This is an action of ejectment which was instituted in the Superior Court of Baltimore City by the appellees against the appellants to recover possession of a strip of ground ten feet wide and one hundred and thirty feet long.   By a deed dated the seventh day of November, 1903, the appellants conveyed to the *feme-covert* appellee a parcel of land described as follows:   "Beginning for the same at a point on the south side of Bonner road distant eighty feet easterly from the southeast corner or intersection of Bonner road and Winfield avenue and running thence easterly bounding on the south side of Bonner road sixty feet; thence southerly parallel with Winfield avenue one hundred and thirty feet, more or less, to the southernmost outline of the whole tract of land there situate belonging to said Nellie Bonner Yost; thence westerly bounding on said southernmost outline sixty feet; and thence northerly by a straight line parallel with Winfield avenue, one hundred and thirty feet, more or less, to the place of beginning." The ultimate question at issue is:  Where is the above-described point of beginning situated?   That inquiry involves the further one as to the location of Winfield avenue.   If Winfield avenue is situated where the appellees contend that it is, then the strip of land now in controversy is within the outlines above transcribed and is owned by the *feme-covert* appellee.   If, on the other hand, Winfield avenue is located ten feet west of where the appellees insist that it is, then the strip of land, ten feet by one hundred and thirty feet in dimensions, is not within the outlines of the deed of November the seventh, 1903.   It is obvious, therefore, that the fundamental inquiry is one of fact.   With findings of fact by the Court below when sitting as a jury, we having nothing to do in such cases as this further than to ascertain whether any legally sufficient evidence was adduced tending to prove the fact to be proved when that question is raised by the prayers.   As one of the prayers presented by the defendants, who are the appellants here, asked the Court to rule as matter of law under the pleadings that there was no evidence in the case

legally sufficient to entitle the plaintiffs to recover; and as that prayer was rejected, it becomes necessary for us to determine, not the true location of Winfield avenue, but whether there was any legally sufficient evidence introduced showing or tending to show that it is located where the appellees insist that it is.

The trial resulted in a verdict for the plaintiffs upon which a judgment was entered. From that judgment this appeal was taken. The only bill of exceptions contained in the record brings up the rulings of the Court in striking out certain evidence admitted subject to exception and in granting and rejecting certain prayers. Defence on warrant was not taken. If it had been the situation would have been very greatly simplified. But we must deal with the case as we find it.

Turning now to the prayer to which allusion has already been made, let us see what evidence was introduced during the trial to support the contention of the appellees as to the location of the beginning point of the deed under which they claim title to the strip of land in controversy. The property forms part of a tract known as "Oakfields," which belonged to the Slingluff estate and which prior to 1892 was undeveloped farm land. In the year just named, or shortly thereafter, the trustees of the Slingluff estate laid out Oakfields into lots and streets on paper, and subsequently began selling the lots. The eastern boundary of the tract was coincident with the western line of the Baltimore and Liberty Turnpike road and to aid in the development of the property the trustees conveyed to the Gwynn Oak Railroad Company a strip of land ten feet in width abutting on the western margin of the turnpike and extending along the entire front of the tract. Upon this ten feet strip one of the tracks of the railroad was constructed. This conveyance cut off ten feet of the depth of the lots which fronted on the turnpike. In April, 1901, the trustees of the Slingluff estate conveyed to Nellie Bonner Yost, one of the appellants, a lot which had formed part of Oakfields and which abutted on the Baltimore and Liberty

Turnpike.    The deed described the lot by courses and dis-
tances, metes and bounds, and the third line running west-
wardly from the turnpike road is thus defined, "thence south
74 degrees and 20 minutes, west four hundred and eighty-four
feet and eleven inches *to the east side of a fifty foot avenue
there laid out,*" whilst the fourth line runs north three hun-
dred feet along the east side of "said avenue."    It was a part
of the lot described in the deed to Mrs. Yost which the ap-
pellants conveyed to one of the appellees.    There were no
physical marks of the fifty foot avenue on the ground at the
time it was laid out; "it was a paper avenue on a farm."    It
had no name.    No plat of it appears to have been recorded
anywhere.    It was part of a farm which was tilled and planted
in corn.    There was nothing to indicate its location or to
designate its boundaries.    North of and contiguous to the
last line of the lot conveyed to Mrs. Yost was another un-
named paper avenue sixty feet in width and subsequently
called Dalrymple avenue.    It ran east and west and intersected
the fifty foot avenue nearly at right angles.    Four hundred
and fifty odd feet north of Dalrymple avenue a lot fronting on
the Liberty road and running back to the unmarked fifty foot
avenue had been sold to one Yeatman, who erected his fence
on the western line of his lot ten feet further west than the
appellees insist that the eastern boundary of the fifty foot
avenue should be located.    Yeatman's fence therefore enclosed
ten feet of the width and two hundred feet of the length of
the fifty foot paper avenue, if that avenue were situated where
the appellees' contention would place it.    This fence together
with other fences was standing as a physical and apparent
eastern boundary of at least a portion of the fifty foot avenue
north of Dalrymple avenue when the conveyance to Mrs.
Yost was made.    After that conveyance was executed and
before Mrs. Moog acquired her title Mrs. Yost erected a
stable on the southwest corner of the lot conveyed to her by
the Slingluff deed and the western side of the stable was
within a few inches of the eastern line of Winfield avenue as
indicated by a prolongation of Yeatman's western fence.    It

may be conceded that when this farm land was originally laid out in lots and streets on an unrecorded plat kept in the office of the trustees and in the office of Mr. Disney their surveyor, it was the intention of the trustees to locate the fifty foot avenue precisely where the appellees contend that Winfield avenue ought to be located; but when the ten foot strip of ground bordering on the Liberty road was conveyed to the Gwynn Oak Railroad the depth of the lots bounded by the turnpike would have been diminished just ten feet unless the proposed and wholly unmarked fifty foot avenue undistinguishable as it then was from the surrounding farm land of which it formed a part, were shifted ten feet further west. Before Mrs. Yost purchased her lot in 1901, and consequently before Mrs. Moog bought from Mrs. Yost in 1903 and before the name of Winfield avenue was given to any street or avenue in that vicinity, the trustees did in fact change the location of the fifty foot avenue by moving it ten feet farther to the west which brought its eastern boundary to the line where Yeatman subsequently built his fence and where later on Mrs. Yost erected her stable. This change of location was made by Mr. Disney on the plat in his custody by drawing a red line sufficiently far west of the original east line of the fifty foot avenue to indicate that the east line had been moved ten feet to the west, and by reducing the width of the block on the west side of the fifty foot avenue from four hundred to three hundred and ninety feet. This change was made seven years before Mrs. Yost acquired any title from the Slingluff trustees and nine years before Mrs. Moog acquired any title from Mrs. Yost. As the fifty foot avenue had not been opened and was still tilled as farm land and as it does not appear that any conveyances had been made calling for it as a boundary and no plat of it or of the contiguous lots had been recorded in any land record or filed in any judicial proceeding, it is not perceived that there was such a dedication of it to the public by the surveyor's plat made for the use and the convenience of the trustees, as would preclude the trustees from changing its outlines in 1894 by the same method which they had pur-

sued in originally locating it.    But however that may be the fact is undisputed that in 1894 the trustees did change the location of the fifty foot avenue by shifting it ten feet further west; and it is equally certain that the change was then noted on their plat.    After all this had been done the avenue received the name of Winfield avenue.    Mrs. Yost opened a street called Bonner road across her lot from the Liberty turnpike to Winfield avenue.    The lot sold and conveyed by her to Mrs. Moog fronts on Bonner road, and does not touch Winfield avenue.

Going back now to the deed to Mrs. Moog, it will be remembered that the place of beginning of the lot conveyed thereby is described as being at a point on the south side of Bonner road distant eighty feet easterly from the northeast corner or intersection of Bonner road and Winfield avenue. At the time that deed was made in 1903 the eastern line of the fifty foot avenue had been moved ten feet to the west as heretofore mentioned and in the manner heretofore pointed out.    It was wholly immaterial that the deed to Mrs. Yost did not embrace the ten foot strip intervening between the eastern line of the original fifty foot avenue and the new eastern line of Winfield avenue, because Mrs. Yost did not undertake to convey any portion of that strip.    The reference to the intersection of Bonner road and Winfield avenue as the point from which the distance of eighty feet along Bonner road was to be measured in order to fix the spot at which the first line of Mrs. Moog's deed was to start was a reference to a physical condition *then* existing and indicated on the ground, and on the plat in the possession of Mr. Disney, just as clearly as would have been a reference to a stone or stake there planted.    The description in Mrs. Moog's deed does not call for a beginning eighty feet east of the intersection of Bonner road and a fifty foot avenue, but eighty feet east of the intersection of Bonner road and *Winfield avenue;* and Winfield avenue according to the undisputed evidence was *then* located ten feet farther west than the unnamed avenue had been, as the fences north of Dalrymple avenue and the stable south

thereof and the red line drawn on Disney's plat plainly indicated.

Now, the evidence adduced by the appellees, the plaintiffs below, to prove that the point of beginning described in Mrs. Moog's deed was ten feet farther east than the physical appearances and the corrected plat indicated, consisted of the deed to Mrs. Yost from the Slingluff trustees and the testimony of two surveyors who located the lines of *that* deed, and then assumed *that* the fifty foot avenue therein mentioned was identical with Winfield avenue as it existed when the deed of 1903 was made. The deed to Mrs. Yost of itself furnished no evidence whatever of the location of Winfield avenue, because no such avenue is named or alluded to in it. It is perfectly clear that the assumption made by the surveyors as to the identity of Winfield avenue with the fifty foot avenue in 1902 or 1903 founded upon their location of the lines of Mrs. Yost's deed without any reference to the change made in the outlines of the fifty foot road in 1894, was entirely insufficient to prove the proper location of the point of beginning described in the deed to Mrs. Moog. This is not a case in which there is a conflict of evidence with respect to a disputed fact which the jury or the Court below sitting as a jury, must determine. It is, on the contrary, a case in which if the plaintiffs recover they must recover in accordance with, and after gratifying, the rule which imposes upon them the burden to prove by legally sufficient evidence that the correct location of the land described in the declaration includes the narrow strip in controversy. A conjecture or an assumption by a surveyor that a beginning point is located at a place designated by him when he at the same time admits that the data of which he was ignorant (but which other testimony incontestibly establishes) would entirely overthrow that conjecture or assumption, could scarcely be considered competent or legally sufficient evidence to go to a jury or to be considered by a Court sitting as a jury. And yet if these conjectures or assumptions be excluded there is not a shred of evidence, apart from Mrs. Yost's deed, upon which the plaintiff can

rely to sustain the contention that the beginning point of Mrs. Moog's deed is ten feet nearer to the Liberty road than the appellants maintain that is. As Mrs. Yost's deed is wholly incapable of proving at what point the south line of Bonner road intersects the east line of Winfield avenue, and as *that* point is the one from which the measurement of eighty feet must be made in order to locate the beginning of Mrs. Moog's deed, it is obvious that neither Mrs. Yost's deed of itself nor the actual location of its outlines on the ground could prove or tend to prove the true beginning of the plaintiff's deed.

But we go one step farther. If we understand the record there is a palpable inconsistency between the ruling which rejected the defendants first prayer and the ruling which sustained the defendants special exception to the plaintiffs' third prayer. The third prayer is not contained in the record but the special exception is. From what we have said it is apparent that the defendant's first prayer should have been granted because there was no legally sufficient evidence to prove that the intersection of Bonner road and Winfield avenue was at the point contended for by the appellees; and that this was so because the undisputed evidence showed that the location of the fifty foot avenue had been changed before the avenue received the name of Winfield avenue and before the deed to Mrs. Moog was executed. Now the special exceptions which the Court sustained reads as follows: "The defendants except especially to the granting of the plaintiff's prayer No. 3, because there is no evidence legally sufficient to show that the southeast corner or intersection of Bonner road and Winfield avenue was at the point marked A on Plat No. 1; and also because there is no evidence legally sufficient to show that no change was actually made." The point marked A on Plat No. 1 is the point at which according to the appellee's contention the measement of eighty feet eastwardly must begin in order to locate the beginning of Mrs. Moog's land. By sustaining the special exception the Court below ruled that there was no evidence legally sufficient to show that the intersection of Bonner road and Winfield avenue was at point A,

the point for which the appellees contend, and that is precisely the reason why the appellants' first prayer should have been granted.

The appellant's fifth prayer which asked the Court to rule that nothing mentioned in the deed to Mrs. Yost "constitutes of itself legally sufficient evidence to establish the location of said Winfield avenue," ought to have been granted for the reason hereinbefore assigned; and if there were no other error in the rulings excepted to the judgment would have to be reversed for the refusal to give that instruction.

As the judgment must be reversed and as it appears upon a consideration of the whole record that the appellees are not entitled to recover the strip of land in question a new trial will not we awarded.

*Judgment reversed with costs above and below without awarding a new trial.*